IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JASON LARON THOMAS, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 3:13-cv-00226 |
| | ) Judge Trauger |
| MELISSA FOSTER and | ) Magistrate Judge Bryant |
| CORRECT CARE SOLUTIONS, LLC, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Before the court is the plaintiff's objection (ECF No. 51) to the Report and Recommendation ("R&R") filed by Magistrate Judge John Bryant (ECF No. 48), recommending that the motion for summary judgment (ECF No. 35) filed by defendants Correct Care Solutions, LLC ("CCS") and Melissa Foster, a nurse practitioner employed by CCS, be granted and that this action be dismissed. The defendants submitted a response in opposition to the plaintiff's objection to the R&R.

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, as in this case, the district court must review *de novo* any portion of the report and recommendation to which objections are lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Because the plaintiff here has filed a timely objection to the recommendation that summary judgment as to defendant Melissa Foster be granted, the court reviews the motion for summary judgment on behalf of Foster *de novo*.[1]

The plaintiff's complaint alleges, in sum, that he dislocated his left shoulder on January 31, 2013 when he slipped and fell on a recently mopped floor while incarcerated at the Davidson County Sheriff's Office – Criminal Justice Center ("CJC"). He alleges that the care he received at the CJC by defendant

---

[1] In his objection to the R&R, the plaintiff concedes that "it is not possible to continue [the] lawsuit against Correct Care Solutions, because they are not liable for those that they hire." (ECF No. 51, at 1.)

Melissa Foster amounted to deliberate indifference to his serious medical needs. In particular, the plaintiff insists that he should have been sent to the ER immediately following the accident. (*See* ECF No. 1, at 4 ("I feel I should have went to the Emergency Room immediately on Jan. 31.").)

Although the plaintiff asserted in his initial complaint that defendants provided essentially no care for his injury, the documentation and affidavits submitted by the defendants establish that the plaintiff received a significant amount of medical attention, just not in the form he believes he needed. The magistrate judge summarized the evidence presented by the defendants as follows:

> During the Plaintiff's initial examination after the accident on January 31, 2013, Plaintiff claimed to have fallen during an altercation and stated that his left shoulder was "out of place and needs to be put in place." Ex. 1 to Affidavit of Jeremy McGraw. At this examination, Plaintiff was able to partially lift his left arm approximately ninety degrees, but experienced pain when doing more. *Id.* Nurse Foster subsequently placed a call to the physician on-call to obtain orders, and continued to monitor the Plaintiff's condition. *Id.* Later that day, Ms. Foster wrote an order for Plaintiff's left arm to be placed in a sling for thirty days and for x-rays of the left shoulder and elbow to be taken. Ex. 2 & 3 to Affidavit of Jeremy McGraw.
>
> The next day on February 1, 2013, Plaintiff underwent x-rays of his left shoulder and elbow. Ex. 4 to Affidavit of Jeremy McGraw. Although they showed signs of a dislocation, the x-rays revealed no further abnormalities. *Id.* On this same day, Plaintiff made a sick call complaining of a sharp chest pain and an inability to lay down to sleep stemming from his dislocated shoulder. Ex. 5 to Affidavit of Jeremy McGraw. As the Plaintiff was not wearing his prescribed sling at the time, he was educated on wearing his sling by a nurse and given an increased dosage of Ibuprofen. *Id.*
>
> On February 5, 2013, Ms. Foster reviewed Plaintiff's x-ray results and ordered that an orthopedic referral be made for the first available appointment. Ex. 6 to Affidavit of Jeremy McGraw. She also advised the Plaintiff to continue to wear the sling and take additional Ibuprofen. *Id.* Two days later, on February 7, 2013, Ms. Foster examined the Plaintiff again and prescribed him Tylenol. Ex. 7 to Affidavit of Jeremy McGraw.
>
> On February 18, 2013, Plaintiff made another sick call request complaining that his shoulder was still out of place and that the Tylenol was not helping. Ex. 8 to Affidavit of Jeremy McGraw. No further action was taken at that time. *Id.* On February 23, 2013, Plaintiff made another sick call request related to his shoulder, requesting additional medication for the pain and a bottom bunk pass. Ex. 10 to Affidavit of Jeremy McGraw. Plaintiff was seen by a nurse the following day, who increased his Tylenol dosage to 975 mg. . . . [2] Plaintiff did not request any further treatment before filing the instant suit against the Defendants.

---

[2] The magistrate judge and the defendants also characterized the medical notes as showing that when the plaintiff's dose of Tylenol was increased to 975 mg, the plaintiff refused to take it. (See ECF No. 33, at 3; ECF No. 48, at 4 (both citing Ex. 11 to McGraw Aff., ECF No. 35-2, at 18).) The plaintiff contends, correctly, that nothing in the record reflects that he refused the medication. (*See* Ex. 11 to McGraw Aff., ECF No. 35-2, at 18 ("S: Pt seen on sick call this am with c/o tylenol not helping the pain for his dislocation shoulder and needing a bottom bunk pass . . . . P: Referred to HCP, 975 mg tylenol BID x 3 weeks and an order for a bottom bunk pass.").) The magistrate judge's mischaracterization of this fact, however, is not material to the resolution of the defendants' motion.

(ECF No. 48, at 3–4.)

In his R&R, Magistrate Judge Bryant first articulated the standard of review applicable to motions for summary judgment, and found that the undisputed facts failed to establish that defendant Foster acted with deliberate indifference to the plaintiff's serious medical needs. Specifically, the magistrate judge found that the evidence regarding the care provided by defendant Foster, at worst, showed negligence rather than deliberate indifference. The magistrate judge also found that the plaintiff's complaint failed to articulate a medical-malpractice claim under state law and therefore declined to address the defendants' arguments related to Tennessee medical-malpractice law.

The law is clear that the government has a constitutional obligation to provide medical care for the individuals it incarcerates, and "deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A claim of deliberate indifference to a prisoner's serious medical needs has both a subjective and an objective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

To satisfy the objective component, the plaintiff must show that he had a "sufficiently serious" medical need. *Comstock*, 273 F.3d at 703. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). This element is not at issue here: The court accepts and the defendants apparently concede for purposes of their motion for summary judgment that a dislocated shoulder constitutes a sufficiently serious medical need to satisfy the objective component of the deliberate-indifference claim.

For the subjective component, the plaintiff must demonstrate that the defendant had a sufficiently culpable state of mind—in other words, that the official acted with "deliberate indifference" to the plaintiff's serious medical need. *Farmer*, 511 U.S. at 834. Although this standard does not require a showing that the defendant acted with a purpose or intent to inflict harm, the standard is not satisfied by a showing of negligence. *Comstock*, 273 F.3d at 703; *see also Estelle*, 429 U.S. at 105–06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute . . . medical mistreatment under the Eighth Amendment."). The plaintiff must show more than medical malpractice and negligence on the part of the

defendant because the subjective requirement acts "to prevent the constitutionalization of medical malpractice claims." *Comstock*, 273 F.3d at 703. *See also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). In short, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

The plaintiff here offered only a cursory response to the defendants' motion for summary judgment, mostly objecting to the affidavit of Jeremy McGraw on the basis that McGraw did not actually witness the events to which he attests in his affidavit. As the magistrate judge noted, McGraw's testimony was offered in his capacity as custodian of CCS's medical records, and he attests to what the plaintiff's medical record with CCS shows. McGraw's lack of personal knowledge of the contents of the medical record is irrelevant.

In his objection to the R&R, the plaintiff continues to complain that he should have been sent to the ER immediately after his injury. He argues that defendant Foster acted with deliberate indifference because "the fact still remains that Plaintiff wasn't [taken] to the hospital," despite an x-ray that confirmed the diagnosis of a dislocated shoulder, "and a jury should want to hear the reason why nothing happened until two months later." (ECF No. 51, at 1.) The plaintiff further alleges that when he was finally taken to an orthopedic specialist some two months after the incident that caused the dislocated shoulder, the orthopedist told the plaintiff that he should have been taken to the hospital immediately after the accident and that "no surgery would be intended due to Plaintiff's shoulder [having been] out of place for to[o] long." (*Id.*) The plaintiff's objection, however, is not sworn under penalty of perjury. Even if it were, the alleged statement by the orthopedic doctor is not sworn. The Court may not consider unsworn, inadmissible statements at the summary judgment stage. Fed. R. Civ. P. 56(c), (e). *See also Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("'[A] court may not consider unsworn statements when ruling on a motion for summary judgment.'" (quoting *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991)).

The plaintiff has not shown that Foster was responsible for the two-month delay in his getting to see the specialist. Further, to the extent Foster might have been negligent in failing to send him to the ER immediately after the accident, such negligence does not constitute deliberate indifference. The defendants' declarations and medical records show that the plaintiff was seen on numerous occasions in response to his complaints about his shoulder, was sent for x-rays, was prescribed a sling and pain medication (ibuprofen and acetaminophen), was referred to an orthopedic specialist, and received a bottom-bunk pass at his request. By his own admission, he eventually did see an orthopedic specialist, albeit after a two-month delay. He has not shown that Foster was responsible for that delay, nor has he presented admissible evidence suggesting that his condition was ultimately exacerbated or that he has suffered a permanent injury resulting from the delay in being seen by the specialist.

This undisputed evidence clearly shows that the plaintiff's medical issues concerning his shoulder were not ignored or treated with indifference and that he was provided with a course of treatment at the CJC. Based upon the defendants' unrebutted evidence, no reasonable juror could find that defendant Foster was deliberately indifferent as is required for a constitutional claim. At worst, the plaintiff's claim against Foster essentially amounts to a personal displeasure with the adequacy of the treatment he received. Although "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference," *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843–44 (6th Cir. 2002) (internal quotation marks and citation omitted), the evidence before the court does not come close to supporting such a conclusion. When a prisoner has received some medical attention and the dispute is over the adequacy of that care, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law, *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976), and it is well settled that neither negligence nor medical malpractice will support a constitutional claim. *Estelle*, 429 U.S. at 106; *Walker v. Norris*, 917 F.2d 1449, 1454 (6th Cir. 1990). Although the care the plaintiff received at the CJC may not have been of the same quality as the care he might have received had he not been incarcerated and sought treatment on his own from private medical care providers, the Eighth Amendment does not guarantee that a prison inmate receive the "'optimum' or 'best' medical treatment." *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978). As the magistrate judge

noted, in his complaint, the plaintiff specifically asserts that he seeks judgment for damages caused by the defendants' "negligence." (ECF No. 1, at 4.)

Accordingly, an order will enter overruling the plaintiff's objections to the R&R, accepting the magistrate judge's recommendation, and dismissing this action with prejudice. All other pending motions will be terminated as moot. An appropriate order is filed herewith.

_____
Aleta A. Trauger
United States District Judge